HUSKINSON, BROWN & HEIDENREICH, LLP
DAVID W.T. BROWN, Bar No. 147321
BRIAN D. CENTER – Bar No. 166583
1200 Aviation Blvd., Suite 202
Redondo Beach, CA 90278
Telephone:   (310) 545-5459
Facsimile:   (310) 546-1019

Attorneys for Plaintiff
JONATHAN LAROCQUE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN LAROCQUE, an individual, and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; and DOES 1 to 100,<br><br>Defendants. | CASE NO: 2:23-cv-04549-SVW-MAR<br><br>Complaint Filed: October 12, 2022<br>FAC Filed: June 9, 2023<br><br>**PLAINTIFF JONATHAN LAROCQUE'S REPLY BRIEF IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION OF CLASS FOR COLLECTIVE ACTION; REQUEST FOR EQUITABLE TOLLING**<br><br>Date:  May 13, 2024<br>Time: 1:30 p.m.<br>Ctrm: 10A |

---

PLAINTIFF'S REPLY BRIEF RE MOTION FOR CONDITIONAL CLASS CERTIFICATION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     The Employees At Issue are Similarly Situated

Defendant, the City of Los Angeles ("Defendant" or the "City") spends considerable time and effort to explain how complex and varied the process is to award raises to employees from various departments. However, these details are irrelevant to the determination that the employees at issue in this matter – who have received raises and have been paid in an untimely manner or still unpaid  – are similarly situated.

. It is clear that employees throughout the City (1) received a raise during the relevant time period and (2) were not paid timely.  Their similarity in not being paid, and the logic of litigating all of their claims together, do not change based on the reason they received a raise or how it was processed.  Whether or not an employee received a raise because of an automatic step up in pay, or a more complicated determination of whether they qualify for a bonus, does not change the class at all.

Indeed, when reading the declarations submitted by the City closely, it is difficult to even follow the City's argument about why such information is relevant.  For example, Daniel Quach testifies that the payroll department, when issuing checks, "has no way to tell what the appropriate rate of pay is for a particular employee unless this information is provided by the department in which that employee works." (Quach Decl., par. 9).  Fine.  But he does not explain why each department cannot simply tell the Payroll Department the information at the appropriate time, something they do on a daily basis.  He doesn't explain why mistakes that violate the law should be excused or ignored.

As a second example, Sandy Duarte testifies that an employee's transfer between stations in the Fire Department must be manually entered into the payroll system called Workday.  She

gives an example where an employee must provide a copy of their certification related to handling hazardous materials before the payroll personnel can submit a "HazMat" bonus into Workday. (Duarte Decl., par. 14.) Again, she does not explain why the City should not be liable if a bonus went into effect for this hypothetical employee, for example on January 1, and she was not paid her bonus until July 1, or she still is yet to receive that bonus. It is absurd for the City to argue that it is somehow impossible for a department to be organized enough to inform the Payroll Department that this person is set to receive a bump in pay and then, once the employee provides the certification, the payroll system is notified so that the raise goes into effect right away. It is just as absurd to argue that the employee who received an automatic raise, and the employee who received a raise because of a training bonus, and the employee who received a raise because of a merit bonus, are not similarly situated.

     Perhaps the City is trying to appeal to a practical argument that, if granted class certification, this case would be never ending because, as we speak, some department payroll employee could be struggling to figure out the propriety of a raise, or a memo granting a raise may be late in making its way to the person assigned to input the information into the payroll system, creating another class member. Such a problem is easily fixed (assuming the City doesn't simply fix the problem by ensuring that pay raises are entered into the system the day they take effect, or creating a rule that the pay raise does not take effect until the employee does their job to provide the information within their control) by picking a date to cut-off this matter, for example June 1, 2024. Then the City can conduct a review, identify all class members, and save future mistakes for the next lawsuit that is sure to arrive if they do not become competent at this task.

Or, perhaps the City is trying to argue that these employees are not similarly situated because there is not a single policy or plan that leads to employees being underpaid. (Opp., p. 17). However, that is not the law. The class here is similarly situated by a common act of incompetence – once a department determines that an employee is entitled to a raise, they simply don't tell the Payroll Department in a timely manner, or sometimes at all. That is enough to support a class. Similarly situated in this context means employees share some material aspect of the litigation that allows plaintiffs the advantage of lower individual costs to vindicate rights by pooling resources. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1114 (9th Cir. 2018).

## II.     The Gap Time Issue Does Not Alter The Conclusion that Conditional Certification is Proper

The City also argues that it has not admitted that any FLSA violations occurred, because it is uncertain if enough people lost out on overtime to form a class. (Opp., p. 6, 19-20.) While this is a surprise to Plaintiff because the issue has not been raised by the City to date with counsel, even if true, it does not alter the conclusion that conditional class certification is appropriate.

The determination at this stage is pre-discovery, based on the pleadings and affidavits submitted to date. The pleadings assert that employees were not paid overtime, and the City's evidence does not deny that or even address any analysis performed to date. It would be hard to believe that less than 40 employees who were underpaid did not receive overtime pay during those pay periods. It also is hard to believe that if the City simply took some time to review their records of who received a pay raise and who received it in an untimely manner, they could not calculate who is entitled to overtime pay. This analysis and task would be required anyway, and the City claims that it will conduct this analysis.

3

PLAINTIFF'S REPLY BRIEF RE MOTION FOR CONDITIONAL CLASS CERTIFICATION

Indeed, the City Controller testified that there are three reasons why they cannot figure out who was improperly paid:  (1) their payroll system is old, (2) the process takes place in each department as opposed to being centralized in the Payroll Department, and (3) they are understaffed.  (Transcript, p. 7).  All of these reasons make clear that it *is* possible to do it, they just don't want to because they are busy.  This case was filed in 2022 and the City has promised since that time to find out this information, and they clearly have not even tried.  A Court order should be issued so that each Department's payroll staff should review their records to determine, within a defined date range, who received a raise and was underpaid.  They should be given a reasonable time to complete the task.

Also, as noted in the Motion, injunctive relief is appropriate in this matter pursuant to 29 USC Section 217, and the amount owed to the class is merely incidental to that equitable relief. In other words, Plaintiff requests that the Court order the City to stop dragging its feet and identify the class so that the violations of law will stop.  The City already has promised to pay back those employees all wages owed, including straight time.  It is an unhelpful and theoretical argument for the City to then, in the same breath, argue that a collective action is not feasible because it is technically only liable under FLSA for overtime, even though it still plans to calculate and pay for straight time. The purpose of an injunction in this context is to "make whole employees who have unlawfully been deprived wages and to eliminate the competitive advantage enjoyed by employers who have illegally underpaid their workers. *Donovan v. Sovereign Security,* 726 F.2d 55, 58 (2nd Cir. 1984).

**III.    The Other Lawsuits Do Not Operate to Deprive This Class from Relief**

The City next argues that 532 (out of over 4,000) employees of the Fire Department sued the City for similar issues in October 2023, and police officers involved in "donning and

doffing" also sued the City for FLSA violations in late 2023.  (Opp., p. 15, 18).  The City concludes that these other lawsuits will make this one impossible to operate in a fair and efficient manner.  The City does not cite to any law or facts to support this argument and, under this logic, the other lawsuits could be dismissed too to avoid confusion.  The City also does not explain the procedural status of either case.  In any event, it is a frivolous argument.  Notice to potential plaintiffs can be made clear and, if necessary, the Court could order the matters related and coordinate the notices.  This certainly is not enough of an issue to deprive the class members here of relief.

**IV.   The Matter Should Be Equitably Tolled**

Finally, in another effort to deny its employees money they are owed, the City argues that this matter should not be equitably tolled.  The City does not deny that it has promised to resolve this matter informally from the outset, and that such promises led to delay, including the matter being taken off of the active calendar.  It would be very unjust to deny equitable tolling in this context.

The City also cites to Local Rule 7-4, arguing that they were not given proper notice of this issue.   The Caption of the Motion does explicitly request equitable tolling, an issue that has been discussed with counsel and with which they are very familiar.  It did not prejudice them in any way.

**V.   CONCLUSION**

For the foregoing reasons, Plaintiff requests an order granting conditional certification of this case as a collective action pursuant to FLSA § 216(b) on behalf of the FLSA Class, defined as: "All persons who received a pay raise but were not paid that raise for at least one pay period, from October 17, 2019 through and including the date judgment is rendered in this matter."

Named Plaintiff Jonathan Larocque is the class representative and Brian Center of Huskinson, Brown & Heidenreich is appointed as class counsel.

Plaintiff also requests an order that the City provide the names and contact information for all potential plaintiffs who meet the class criteria, within 3 months, given that the City already has had several years to compile this list and has demonstrated its ability to determine this information.

Plaintiff further requests an order that the parties meet and confer as to the method and language of a notice to the class, to be reported back to the court no later than 120 days.

DATED: May 6, 2024                    **HUSKINSON, BROWN & HEIDENREICH, LLP**

_____
Brian D. Center, Esq.
Attorneys for Plaintiff
JONATHAN LAROCQUE

PLAINTIFF'S REPLY BRIEF RE MOTION FOR CONDITIONAL CLASS CERTIFICATION